## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| DANIEL BATEMAN,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS LLC et al.,<br><br>Defendants. | Case No. 8:25-cv-02696-DFM<br><br>ORDER DENYING MOTION TO REMAND (Dkt. 13) |

The parties have consented to the jurisdiction of this Court. See Dkt. 11. Plaintiff Daniel Bateman ("Bateman") moves for an order remanding this action to state court. See Dkt. 13 ("Motion"). Defendant General Motors LLC ("GM") opposed. See Dkt. 14 ("Opp'n"). Bateman replied. See Dkt. 15 ("Reply").

The Court deemed this matter appropriate for decision without oral argument. See Dkt. 16. For the reasons set forth below, Bateman's Motion is DENIED.

### I.   BACKGROUND

On August 1, 2025, Bateman filed this lawsuit in Orange County Superior Court, alleging claims under California's Song-Beverly Consumer Warranty Act ("Song-Beverly"), Cal. Civ. Code § 1790 et seq.; the California Uniform Commercial Code; and the federal Magnuson-Moss Warranty Act

("MMWA"), 15 U.S.C. §§ 2301-2312. See Dkt. 1-1 ("Complaint"). Bateman seeks actual damages; restitution; a civil penalty in the amount of twice actual damages; consequential and incidental damages; remedies authorized by California Commercial Code §§ 2711-13; attorneys' fees and costs; prejudgment interest; and other appropriate relief. See id. at 13 ("Prayer").

GM was served with the summons and Complaint on August 5, 2025. See Dkt. 13-1, Declaration of Andrea Plata, Esq. In Support of Plaintiff's Motion to Remand ("Plata Decl.") ¶ 5. GM filed an Answer in Superior Court on September 4, 2025 (Dkt. 1-2) but waited until December 1, 2025 to remove the case to federal district court, invoking diversity and federal question jurisdiction. See Dkt. 1 ("NOR").

In the Motion, Bateman primarily contends that GM's removal is "clearly untimely" and thus "procedurally defective" because (1) "Plaintiff's Complaint includes a cause of action brought under federal law" (the MMWA claim), and (2) "[a]lthough Plaintiff's state court complaint does not allege a specific dollar amount in controversy, it is impossible to believe that Defendant could not ascertain the amount in controversy exceeded $75,000.00 based on the face of the complaint alone." Motion at 12-16. Bateman also argues that even if, arguendo, removability was unclear based on the Complaint, his early October 2025 production of the subject vehicle's sales agreement (the "Sales Agreement") rendered the amount in controversy unquestionably ascertainable. See id. at 10, 15-16. Last, Bateman argues that GM has not met its burden on removal of establishing that the amount in controversy exceeds $75,000. See id. at 16-18.

In opposition, GM asserts that the Complaint did not provide notice of grounds for removal and its NOR is not untimely because the Complaint was "strategically drafted to be ambiguous as to jurisdictional facts," the measure and values of the amount in controversy are indeterminate from the

2

Complaint, and Plaintiff's citizenship is indeterminate from the Complaint. See Opp'n at 12-13, 21-27. GM also asserts that "Plaintiff's argument that his Sales Agreement constitutes an 'other paper' that triggered a removal deadline has been roundly rejected by the courts." Id. at 15, 19-21. Additionally, GM asserts that it has established the amount in controversy by a preponderance of the evidence. See id. at 27-30.

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013) (internal quotation marks and citation omitted). Under 28 U.S.C. § 1441, a defendant may remove a civil action from state court to federal district court only if the federal court has subject matter jurisdiction over the case. See City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 163 (1997) ("The propriety of removal thus depends on whether the case originally could have been filed in federal court."). Courts strictly construe the removal statute against removal jurisdiction. See Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005); Luther v. Countrywide Home Loans Servicing LP, 533 F.3d 1031, 1034 (9th Cir. 2008). "A defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." Luther, 533 F.3d at 1034 (citation omitted). Remand to state court may be ordered for lack of subject matter jurisdiction or any defect in the removal procedure. See 28 U.S.C. § 1447(c).

"The mechanics and requirements for removal are governed by 28 U.S.C. § 1446." Kuxhausen v. BMW Fin. Servs. NA LLC, 707 F.3d 1136, 1139 (9th Cir. 2013). "Section 1446(b) identifies two thirty-day periods for removing a case." Id. (internal quotation marks and citation omitted). "The first thirty-day removal period is triggered if the case stated by the initial pleading is removable on its face." Id. (internal quotation marks and citation

omitted). For the first thirty-day removal period to apply, "the ground for removal must be revealed affirmatively in the initial pleading" "[t]o avoid saddling defendants with the burden of investigating jurisdictional facts." Id. (internal quotation marks omitted) (citing Harris, 425 F.3d at 695). If the ground for removal does not appear from the face of the initial pleading, the second thirty-day removal period is triggered when "the defendant receives a copy of an amended pleading, motion, order or other paper from which removability may first be ascertained." Id. (internal quotation marks and citation omitted).

## III.   DISCUSSION

As discussed below, the Court concludes that neither the face of the Complaint nor the Sales Agreement alone made the grounds for removal sufficiently clear to start the thirty-day removal clock under 28 U.S.C. § 1446(b). Accordingly, the Court rejects Bateman's untimeliness argument. The Court further concludes that GM met its burden on removal of establishing subject matter jurisdiction.

**A.   The Complaint Did Not Start the 30-Day Removal Clock.**

Bateman primarily contends that the grounds for removal were set forth on the face of the Complaint because it alleges an "independent claim under the Federal [MMWA], [which] formed the basis of federal question jurisdiction when initially filed on August 1, 2025." Motion at 13. But the MMWA states that "[n]o claim shall be cognizable . . . if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(B). Thus, "[i]n order [to] file a claim in district court under the [MMWA], the amount in controversy must be at least $50,000." Guerrero v. Mercedes-Benz USA, LLC, No. 23-00242, 2023 WL 4085975, at *1 (C.D. Cal. June 20, 2023) (citing 15 U.S.C. § 2310(d)(3)(B)).

Bateman acknowledges that the Complaint "does not allege a specific dollar amount in controversy." Motion at 13. Nonetheless, Bateman contends that "it is impossible to believe that Defendant could not ascertain the amount in controversy exceeded $75,0000.00 based on the face of the complaint alone." Id. "Given its sophisticated knowledge of the motor vehicle industry, Defendant GM has, at a minimum, a rudimentary understanding or ability to ascertain an approximation of the Subject Vehicle's market value as the manufacturer and distributor of the Subject Vehicle; especially given that the make, model, year, and VIN, were included within the factual bases alleged within the Complaint." Id. at 14-15.

As this Court discussed in another recent case, see Villanueva v. General Motors LLC, No. 8:25-cv-02047, Dkt. 16 (denying a similar motion to remand), the Ninth Circuit has foreclosed this type of argument. Instead, the Ninth Circuit has turned to "a bright-line approach" that relies on "objective analysis of the pleadings" instead of asking "whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry." Harris, 425 F.3d at 697. Under the Ninth Circuit's approach, "bare allegations of the make and model of the vehicle and broad claims for broad categories of damages are insufficient to trigger the removal deadline." Torres v. General Motors LLC, No. 25-6820, 2025 WL 2848989, at *3 (C.D. Cal. Oct. 7, 2025); see also Martinez v. General Motors LLC, No. 25-7208, 2025 WL 2926885, at *5 (C.D. Cal. Oct. 15, 2025) ("Defendant was not required to research its internal files to determine the value of the vehicle contract at issue."). In short, Bateman appears to confuse the "plausible allegation" standard for evaluating a notice of removal under Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81 (2014) with the more demanding standard to trigger the removal deadline under 28 U.S.C. § 1446(b). See, e.g., Kuxhausen, 707 F.3d at 1141, n. 3 ("It bears repeating that whether a defendant can establish that federal

jurisdiction exists and the question of when the thirty-day time period begins are not two sides of the same coin.").

Bateman also contends that the four corners of the Complaint provided GM notice of the nature and monetary relief sought where "both the caption page and accompanying Civil Case Cover Sheet, expressly indicated that the claim was being brought under the state court's unlimited jurisdiction (seeking damages above $35,000.00)." Motion at 15. However, there is no indication of whether the amount demanded is the total amount in controversy, in which case the amount would be too low, or whether this is the amount demanded for actual damages. See Longoria v. Ford Motor Co., No. 22-7560, 2022 WL 16961482, at *3 (C.D. Cal. Nov. 16, 2022) (rejecting similar contention). Thus, the Court concludes that the caption page and Civil Case Cover Sheet were insufficient to trigger GM's thirty-day deadline.

In sum, the Court concludes that GM's thirty-day deadline for removal was not triggered under 28 U.S.C. § 1446(b)(1) because the Complaint is indeterminate as to the amount in controversy.

## B.    The Sales Agreement Did Not Start the 30-Day Removal Clock.

Next, Bateman argues that his October 2025 production of an "other paper"—namely, the subject vehicle Sales Agreement, which identifies a total sales price—triggered the 28 U.S.C. § 1446(b)(3) thirty-day removal deadline such that Defendant's NOR was untimely. See Motion at 2, 8-10, 15-16; Plata Decl. ¶ 8. GM contends that "Plaintiff's argument that his Sales Agreement constitutes an 'other paper' that triggered a removal deadline has been roundly rejected by the courts." Opp'n at 15, 19-21.

The Sales Agreement alone does not meet the high "unequivocally clear and certain" standard for removability under 28 U.S.C. § 1446(b)(3). See Blumberger v. Tilley, 115 F.4th 1113, 1122 (9th Cir. 2024). Regarding federal question jurisdiction, an MMWA claim is not cognizable unless the amount in

controversy exceeds $50,000. 15 U.S.C. § 2310(d)(3)(B). Because the MMWA does not specify the appropriate measure and type of damages, "courts, including the Ninth Circuit, have turned to the applicable state law to determine what remedies are available under the [MMWA], which of necessity informs the potential amount in controversy." See, e.g. Romo v. FFG Ins. Co., 397 F. Supp. 2d 1237, 1239 (C.D. Cal. 2005) (citing Kelly v. Fleetwood Enters., Inc., 377 F.3d 1034, 1039 (9th Cir. 2004)). The Court may therefore conduct a unified analysis, because the calculation of damages sought under Plaintiff's Song-Beverly Act claims may be similarly applied to establish the amount in controversy for the MMWA claim.[1]

---

[1] GM appears to suggest that Bateman seeks "benefit of the bargain" type damages along with fees and costs for his MMWA claim. See Opp'n at 14. But the Complaint's Prayer for Relief is not delineated claim-by-claim. See Complaint at 13. GM also notes the uncertainty as to how district courts in this Circuit evaluate the amount in controversy under the MMWA. See Opp'n at 21-23 (citing, inter alia, Orichian v. BMW of N. Am., LLC, 226 Cal. App. 4th 1322, 1330-32 (2014) (finding error in trial court's conclusion that the only available remedies under the MMWA were those available under the Song-Beverly Act)). While Bateman makes no argument to this effect, the Complaint seeks remedies under California Commercial Code §§ 2711-13 in addition to those under the Song-Beverly Act. However, to the extent the Commercial Code remedies provide an alternative measure of the amount in controversy under the MMWA, the Sales Agreement still does not make it "unequivocally clear and certain" that the amount in controversy requirement is met under these theories. It appears that the Sales Agreement lists only the purchase price, but does not identify how much Bateman has paid on the vehicle, as required under § 2711(1). The Sales Agreement also provides no information about the market value of the vehicle at the time of the alleged breach, as required to calculate the cost of cover under § 2712 and the difference between "the market price at the time when the buyer learned of the breach and the contract price," as required by § 2713. Thus, even under these alternative theories, Bateman's production of the Sales Agreement alone does not meet the Ninth Circuit's "unequivocally clear and certain" standard to trigger the second thirty-day removal deadline. See Blumberger, 115 F.4th at 1122.

Actual damages under the Song-Beverly Act are measured by the "the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity." Cal. Civ. Code § 1793.2(d)(1)-(2). To calculate the amount attributable to the buyer's use, California law provides a "use offset" formula, which uses the mileage attributable to the buyer and the vehicle price to calculate the value of the use the buyer got from the car before discovering the problem(s). Cal. Civ. Code § 1793.2(d)(2)(C). The Ninth Circuit has sanctioned including a use-offset deduction when estimating the amount in controversy because any estimate thereof "must be reduced if a specific rule of law or measure of damages limits the amount of damages recoverable." Schneider v. Ford Motor Co., 756 F. App'x 699, 701 n.3 (9th Cir. 2018) (internal quotation marks and citations omitted); see also Manukyan v. Mercedez-Benz USA, LLC, 2:24-cv-9816, 2024 WL 5440725, at *2 (C.D. Cal. Dec. 10, 2024) (applying Schneider outside the CAFA context).[2] Additionally, under California law effective January 1, 2025, defendants in actions seeking restitution for motor vehicles are entitled to offsets for, inter alia, negative equity, rebates, and unpaid financing and interest. See Cal. Code Civ. Proc. § 871.27(b), (c), (d), (f); see also id. § 871.20 (indicating that § 871.27 applies to Song-Beverly claims).

Bateman's October 2025 production included only the Sales Agreement, not the repair orders or financing information.[3] Though the Sales Agreement

---

[2] GM acknowledges that a minority of district courts do not consider offsets when assessing the amount in controversy based on the position that the offsets are defenses. See Opp'n at 25-26.

[3] Bateman notes that he produced the Sales Agreement plus all repair orders to GM on April 11, 2025. See Plata Decl. at ¶ 7. As the Ninth Circuit has concluded, "any document received prior to the receipt of the initial pleading cannot trigger the second thirty-day removal window." Carvahlo v. Equifax Info. Servs., LLC, 629 F.3d 876, 886 (9th Cir. 2010).

contained information relevant to calculating the amount in controversy, the Sales Agreement, standing alone, lacked information—such as mileage necessary to calculate offsets and, therefore, actual damages—and thus did not make it "unequivocally clear and certain" that the case was removable. See Dietrich v. Boeing Co., 14 F.4th 1089, 1095 (9th Cir. 2021); see also Cal. Civ. Code § 1793.2(d)(2)(C); Cal. Code Civ. Proc. § 871.27(b), (c), (d), (f). Because actual damages were uncertain based on the Sales Agreement, so were the maximum civil penalties. See Cal. Civ. Code § 1794(c) (maximum penalties under Song-Beverly are twice actual damages).

In sum, while the Sales Agreement may have made it likely that the amount in controversy requirement was met, "likely" is not "unequivocally clear and certain." Blumberger, 115 F.4th at 1122. The Court concludes that Bateman's October production of the Sales Agreement did not meet the high standard for triggering removability. Accordingly, the Court rejects Bateman's argument that GM's removal was untimely based on said production.

## C.   GM Met Its Burden on Removal.

As the Court has concluded that GM's NOR was not untimely based on either the filing of the Complaint or the October production of the Sales Agreement, the Court now addresses whether GM met its burden on removal to establish subject matter jurisdiction.

Under 28 U.S.C. § 1446(a), a defendant's notice of removal must be signed under Fed. R. Civ. P. 11 and include "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant." The Supreme Court has explained that where removal is based on diversity jurisdiction, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart, 574 U.S. at 89. "Evidence

9

establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." Id.

On diversity of citizenship, the NOR points to Bateman's allegation in the Complaint that he is a California resident. See NOR at 3. The NOR further states that GM's "preliminary investigation also concluded that Plaintiff resided in California when he purchased the subject vehicle, and on other occasions, establishing a plausible basis for intent to remain in California thus providing a plausible basis for citizenship." Id. The NOR states that GM has its principal place of business in Michigan and its sole member is a Delaware Corporation with its principal place of business in Michigan. See id. The NOR states that GM is thus a citizen of Michigan and Delaware. See id. at 3-4. The NOR plausibly alleges complete diversity of citizenship, which Bateman has not challenged.

On the amount in controversy, Bateman challenges the $75,000 threshold for diversity jurisdiction, not the $50,000 threshold for federal question jurisdiction under the MMWA. The NOR states that GM estimated the purchase price for the subject vehicle to be $84,972.99. See id. at 5. The NOR further states that GM estimated $15,582.80 in total deductions, including estimates of deductions for mileage offset. See id. Thus, the NOR states that GM's preliminary investigation "yields a plausible estimate of actual damages of $69,390.19." Id. GM pairs this with Bateman's request for civil penalties of twice actual damages, see Complaint at 13, and attorneys' fees to plausibly conclude that the amount in controversy exceeds the $75,000 threshold for diversity jurisdiction, see id. at 5-6.

Bateman challenges GM's allegations as to the amount in controversy, arguing that GM "merely estimates the vehicle's value" to yield estimated actual damages and "ignores the statutory mileage offset." Motion at 17. In his reply, Bateman challenges GM's mathematical calculations, assumption of the

maximum civil penalty, and assertion of attorneys' fees. See Reply at 8-10. Bateman's arguments are not persuasive, in no small measure because he also argues that "it is impossible to believe that Defendant could not ascertain the amount in controversy exceeded $75,000.00 based on the face of the complaint alone." Motion at 13-16 (arguing that the amount in controversy is ascertainable on the face of the Complaint).

To the extent GM was required to provide evidence to establish that the amount in controversy exceeds $50,000 and/or $75,000, it has done so by a preponderance of the evidence and to the Court's satisfaction. See Opp'n at 27-29; see also Dkts. 14-2, 14-3, 14-4.

## IV.   CONCLUSION

Accordingly, Bateman's Motion is DENIED.

Date: February 12, 2026

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge

11